In the Matter of Dawn ROSE,
Debtor–Appellant.

Elliott KAYE, Plaintiff–Appellee,

v.

Dawn ROSE, Defendant–Appellant.

No. 90–3366.

United States Court of Appeals,
Seventh Circuit.

Argued April 5, 1991.

Decided June 14, 1991.

As Amended June 20 and 21, 1991.

David S. Miller, Baker & Miller, Chicago, Ill., for plaintiff-appellee.

Steven Sosman, Chicago, Ill., for debtor-appellant, defendant-appellant.

Before BAUER, Chief Judge, CUMMINGS and POSNER, Circuit Judges.

PER CURIAM.

Plaintiff Elliott Kaye initiated an adversary proceeding in bankruptcy court against debtor Dawn Rose, who is his former wife, and her interim bankruptcy trustee, Allan J. Demars, to determine the dischargeability of a debt. Kaye's second amended complaint alleged that Kaye and Rose traveled to Australia in November 1982, when they were still married, bringing with them $184,000 in cash and traveler's checks belonging to Kaye. The couple deposited the sum in a safety deposit box to which both Rose and Kaye were signatories. Rose left Australia abruptly two months after their arrival, and Kaye alleged that Rose had taken $93,000 of his funds with her. She had mailed $80,000 to herself via a then friend in California and took the rest with her. In December 1982 Rose instituted divorce proceedings in the Circuit Court of Cook County, Illinois, where Judge Willard J. Lassers entered judgment in favor of Kaye and against Rose for $93,000 because of her "larcenous removal of said funds from Australia." Instead of returning Kaye's funds as ordered, Rose filed for bankruptcy. Kaye sought a determination from the bankruptcy court that the $93,000 debt was nondischargeable pursuant to 11 U.S.C. § 523(a)(4) because it had been incurred through larceny. Bankruptcy Judge Katz entered judgment after a two-day trial denying Rose a discharge from the $93,000 debt. The case was appealed to District Judge Ann C. Williams, who agreed with the bankruptcy court, and subsequently Rose appealed to this Court. We affirm.

*Divorce Proceedings in Circuit Court of Cook County*

After hearing evidence from Rose, Kaye and others, Cook County Circuit Judge Lassers found that Rose had "stolen money and personal property belonging to Elliott Kaye" and therefore entered judgment in his favor and against Rose in the amount of $93,000. In entering judgment, Judge Lassers assessed Rose's credibility as follows: "I think we can say she is a con artist, pure and simple con artist. She lies. She cheats."

*Proceedings in Bankruptcy Court*

One week after the divorce court entered the judgment against her, Rose filed for bankruptcy. Kaye asked the bankruptcy court to deny Rose a discharge of the $93,000 debt. As an initial matter, the bankruptcy court declined to apply collateral estoppel in Kaye's favor on the issue of the ownership of the funds. The divorce proceeding involved the state law question of whether the $93,000 represented a contribution by Kaye from the nonmarital estate and thus could be reimbursed to him upon dissolution of the marriage. See Ill.Rev.Stat. ch. 40, ¶ 503(c)(2).[1]

---

1. Under Illinois law, non-marital property does not necessarily become marital property even if placed in joint tenancy. *In re Marriage of Wojcicki,* 109 Ill.App.3d 569, 65 Ill.Dec. 173, 440

In bankruptcy court the question instead was whether Rose had committed "larceny" within the meaning of § 523(a)(4) of the Bankruptcy Code. Larceny is proven for § 523(a)(4) purposes if the debtor has wrongfully and with fraudulent intent taken property from its owner. *In re Nahabedian,* 87 B.R. 214, 215 (S.D.Fla.1988); *In re Hoffman,* 70 B.R. 155, 161 (W.D.Ark. 1986).[2] The bankruptcy court believed Kaye to be under the obligation to prove each element by clear and convincing evidence.[3] Because the bankruptcy judge was not sure of the standards the state court had applied in coming to its decision, he did not estop Rose from litigating the larceny issue. Instead he received testimony in the bankruptcy proceedings.

After trial the bankruptcy judge concluded that Rose "wrongfully and willfully took" Kaye's $93,000 "with fraudulent intent." *In re Rose,* No. 84 B 6386 (N.D.Ill. Aug. 4, 1989) (memorandum opinion). He found that the money belonged to Kaye. He inferred Rose's fraudulent intent from the fact that Rose had ignored Kaye's instructions not to use or take control of his money. The bankruptcy judge also concluded that Kaye had not intended any gift to Rose. Discharge of the $93,000 debt was therefore denied.

*Proceedings in District Court*

Thereafter Rose appealed the bankruptcy court judgment to the district court. In her opinion affirming the bankruptcy court judgment, Judge Williams properly gave deference to the credibility findings of the bankruptcy judge. See Bankruptcy Rule 8013 ("Findings of fact * * * shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses"). She noted that the bankruptcy judge "chose unequivocally to believe Mr. Kaye." *In re Rose,* No. 89 C 7437, 1990 WL 140982 (N.D.Ill. Sept. 25, 1990) (memorandum opinion and order). She agreed with the bankruptcy judge that there was clear and convincing evidence of Rose's larceny. Consequently the district judge also concluded that Rose's debt to Kaye for $93,000 was not dischargeable.

---

■ We review the bankruptcy court's finding of facts under the deferential "clearly erroneous" standard, as did the district court. *In re Bonnett,* 895 F.2d 1155, 1157 (7th Cir.1989). On appeal, Rose complains for the most part, as she did below, about the bankruptcy court's credibility determinations. She argues repeatedly that Kaye's statements regarding his ownership of the funds and the amount of the debt cannot be believed because he is a convicted felon. She presses upon this Court alternative explanations for her actions.

■ Our study of the record before the bankruptcy court satisfies us that Kaye was the owner of the $93,000 in question and that Rose committed larceny. Bankruptcy Judge Katz resolved credibility questions in favor of Kaye and in favor of Patty Williams, who had been Rose's friend but testified against Rose in the bankruptcy proceedings. Their testimony showed Rose took $93,000 from the couple's safety deposit box in Australia, though Kaye had told Rose not to use the funds and himself held the keys to the box. Rose mailed $80,000 of the sum in 20 envelopes to Williams to hold for Rose. The remainder she took with her when departing from Australia. In California, Rose picked up the $80,000 from Williams and warned Williams not to discuss the matter with

---

N.E.2d 1028 (1st Dist.1982) (if property placed in joint tenancy, presumption arises that spouse has given gift to marital estate, but "donor" may rebut gift presumption), appeal denied, 92 Ill.2d 579 (1983), later proceeding, 135 Ill.App.3d 248, 90 Ill.Dec. 139, 481 N.E.2d 939 (1st Dist.1985).

**2.** The definition of larceny for § 523(a)(4) purposes is a matter of federal common law. See *In re Jardula,* 122 B.R. 649 (E.D.N.Y.1990).

**3.** The Supreme Court held this Term that the preponderance of the evidence standard applies to all exceptions from dischargeability of debts contained in Bankruptcy Code § 523(a). See *Grogan v. Garner* [—— U.S. ——], 111 S.Ct. 654 [112 L.Ed.2d 755 (1991)].

anyone. Rose introduced evidence at odds with the statements of Kaye and Williams, and the bankruptcy judge properly analyzed all the testimony in his careful opinion before ultimately finding in favor of Kaye. His conclusions were not clearly erroneous and therefore will not be overturned.

■■■■ Rose contends that the bankruptcy and district courts should have construed the "clear and convincing evidence" standard to be the equivalent of the reasonable doubt test used in criminal cases, citing *In re Rauch*, 18 B.R. 97, 98 (W.D.Mo. 1982). *Rauch* was simply wrong in this respect, for the clear and convincing standard of proof lies between beyond a reasonable doubt and a preponderance of the evidence. *Addington v. Texas*, 441 U.S. 418, 425, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979); *Buildex Inc. v. Kason Industries, Inc.*, 849 F.2d 1461, 1463 (Fed.Cir.1988). In any event, the Supreme Court recently rendered Rose's argument academic by holding in *Grogan v. Garner*, — U.S. —, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), that the standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance of the evidence standard.

■■■■ Rose also cites *Rauch* for the proposition that any inference of fraud must be unequivocal. *Rauch*, 18 B.R. at 99. In this case, the bankruptcy judge inferred from Rose's furtive mailings to California and from her knowledge that Kaye had no intention of sharing his funds with her that Rose had acted with fraudulent intent. Intent may properly be inferred from the totality of the circumstances and the conduct of the person accused. *Nahabedian*, 87 B.R. at 216. *Rauch* is simply a case in which plaintiff

failed to introduce any evidence from which an inference of fraud could be drawn.[4]

In sum, we agree with the bankruptcy court and the district court that Kaye owned the $93,000 in question and that Rose wrongfully and with fraudulent intent took the funds. This amounted to larceny and she was not entitled to a discharge of the debt she had incurred as a result of the divorce court judgment.

The district court's judgment is affirmed.

---

4. The only additional legal argument Rose makes is that Kaye should be equitably estopped from recovering his funds because the funds were derived from drug sales. Without citing any case law, Rose contends that because Kaye has "unclean hands" a bankruptcy court, as a court of equity, cannot declare her debt to him non-dischargeable. Assuming *arguendo* that the funds are illegal proceeds and that the bankruptcy court was obligated to consider Kaye's "unclean hands," it is hardly apparent that Rose

has a superior claim to the $93,000 than Kaye on the equities. Perhaps Rose is implying that as a matter of Illinois property law, Kaye never obtained title to any portion of the funds which were illegal proceeds. But this argument was never made either below or to this Court and therefore will not be commented upon here. See *Sanchez v. Miller*, 792 F.2d 694, 703 (7th Cir.1986), certiorari denied, 479 U.S. 1056, 107 S.Ct. 933, 93 L.Ed.2d 984 (1987).